**TRUCKING EMPLOYEES OF NORTH JERSEY WELFARE FUND, INC.,**
Appellee,

v.

**BELLEZZA COMPANY INC.; XYZ Corporation, a Member or Members of a Control Group of Bellezza Company, Inc.; AA & L Bellezza; Estate of Alfonso Bellezza; Anthony Bellezza; Leonard Bellezza, Sr., Estate of Alfonso Bellezza, Appellant.**

No. 02–1128.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit LAR 34.1(a) Jan. 16, 2003.

Decided Feb. 6, 2003.

Before ROTH, FUENTES and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal by the Estate of Alfonso Bellezza presents a question under the so-called "evade or avoid" provision of the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. § 1392(c). Along with Bellezza Company Inc., XYZ Corporation, AA & L Bellezza (a New Jersey partnership), Anthony Bellezza and Leonard Bellezza, Sr., Appellant has been sued by the trustees of the Trucking Employees of North Jersey Welfare Fund— the administrator of a pension fund as

defined under the Employee Retirement Income Security Act of 1974 ("ERISA").

After Bellezza Company ceased making payments as specified by the Fund, the trustees sought to collect payment of a withdrawal liability pursuant to ERISA that arose when the partnership ceased making payments.

It is not controverted that when an employer leaves the Fund before paying a sufficient amount to cover the benefits promised to its employees, it is assessed a statutorily imposed withdrawal liability. The liability consists of the withdrawing employer's proportioned share of outstanding debt for unfunded benefits remaining in the Fund. Furthermore, because Bellezza Company did not make a request for review within the statutorily prescribed time frame, pursuant to 29 U.S.C. § 1399(b)(2) [ERISA § 4219(b)(2)], or arbitration, pursuant to 29 U.S.C. § 1401(a) [ERISA § 4221(a)], the trustees contend that the entire amount assessed by the Fund is due and owing from Bellezza Company.

Both parties admit that the owners of the Bellezza Company and the general partners of AA&L Bellezza partnership are three brothers, Leonard Sr., Anthony and Alfonso. It is also undisputed that the same three brothers owned more than 80% of Bellezza Company at sometime prior to September 30, 1995 when Bellezza Company ceased making payments to the Fund.

On the date of withdrawal from the Fund, September 30, 1995, Leonard Sr. owned no part of Bellezza Company, Alfonso owned 11.32% and Anthony owned 31.12%. The rest, they contend, was owned by Alfonso's adult children, Leonard Sr.'s adult children, Angela Spanovich (Leonard Sr., Alfonso and Anthony's sister), and Angela's adult son Eli. The three brothers contended that because they no longer collectively owned more than 80% of the out-

standing voting stock of the company when Bellezza Company withdrew from the fund, they should not be liable.

This is precisely the issue presented by Appellant before us on appeal. The question then comes: to determine liability, do we consider the ownership interest only at the time of the withdrawal from the fund in order to determine liability?

## I.

We do not write on a clean slate in this case. In *Flying Tiger Line v. Teamsters Pension Trust Fund of Phila.*, 830 F.2d 1241, 1247 (3d Cir.1987), we said:

> [W]here the party against whom withdrawal liability is being asserted was certainly a part of the control group of an employer subject to MPPAA *at some point in time*, and where the issues fall in dispute within the purview of MPPAA provisions that are explicitly designed for arbitration, the Act's dispute resolution procedures must be followed.

830 F.2d at 1247 (emphasis added)

Thus, for the purpose of triggering operation of MPPAA, ownership as of the date of withdrawal is not the key. It is an undisputed and stipulated fact that as late as 1990, Alfonso, Anthony and Leonard Sr. collectively owned 93.36% of the Class A voting stock of Bellezza Company. This was not disputed by Appellant below and not disputed in their appeal. Instead, it repeats over and over that from and after the date of the sale of stock of Leonard Bellezza to the date of withdrawal liability, Alfonso, Anthony and Leonard Sr. did not collectively own more than 80%. Therefore, it argues that the partnership and corporation were not in the control group on the date of withdrawal.

The question is not whether they were control group members at the time of withdrawal, but whether they were control group members at some time after the enactment of the pension agreement.

It has been stipulated by the parties that, until early 1990, the AA & L Bellezza partnership and Bellezza Company (the corporation) were members of a control group by reason of the their simultaneous ownership of more than 80 percent of the common voting stock of the corporation and 100 percent of the partnership. In addition, it is stipulated that Appellant failed to initiate arbitration under ERISA § 4221 for a determination that the transfers of stock by Leonard Sr. terminated the control group relationship between AA & L Bellezza and Bellezza Company. Contrary to Appellant's argument, the district court made no factual finding. Instead, it accepted the stipulated facts of the parties.

Where a party against whom withdrawal liability is being asserted is certainly a part of the control group of an employer subject to MPPAA at some point in time, and where the issues in dispute fall within the purview of MPPAA provisions that are explicitly designed for arbitration, the Act's dispute resolution procedures must be followed. *Flying Tiger*, 830 at 1247.

Disputes over whether an entity was *ever* a member of the control group— and thus an "employer" under MPPAA— are for the court to determine. The issue of whether or not an entity ceased to be an employer by reason of a transaction or otherwise is one which *must* be resolved in arbitration. *Galgay v. Beaverbrook Coal Co.*, 105 F.3d 137, 141 (3d Cir.1997). In this matter, the issue of whether Appellant was ever in a control group was stipulated by the parties and accepted by the Court as an undisputed statement of fact. As the district court stated, "it is undisputed by both parties that at one point, subsequent to the enactment of MPPAA and prior to the alleged date of the Company's withdrawal, Bellezza (the company and partnership) was run via a control group."

App. at 14. Accordingly, the dispute in this matter "concerns when or whether Bellezza ceased being an employer" and should have been presented to an arbitrator for that reason. *Id.* By reason of Appellant's failure to arbitrate the issue of whether or not it successfully removed itself from the control group, the court did not err in concluding that Appellant waived its ability to contest same pursuant to ERISA § 4221.

## II.

The Fund contends that it is entitled to attorney's fees and costs that it has incurred in opposing Appellant's appeal of the district court's decision. We agree.

An action to recover withdrawal liability is treated in the same matter as a delinquent contribution matter under 29 U.S.C. § 1145 [ERISA § 515]. 29 U.S.C. 1451(b) [ERISA § 4301(b)]. Under the delinquent contribution provisions, Congress has deemed certain remedies mandatory in an action brought by a pension fund to enforce the collection of contributions. 29 U.S.C. § 1132(g)(2) [ERISA § 502(g)(2)]. Such remedies encompass interest on the unpaid contributions; the greater of the accrued interest or an amount not in excess of 20% of the principal due; and reasonable attorney's fees and costs of the action. 29 U.S.C. §§ 1132(g)(2)(B)–1132(g)(2)(D) [ERISA §§ 502(g)(2)(D)–502(g)(2)(F)].

The question then comes whether the district court's mandatory fee-shifting provision applies to an appeal. Although we have never before spoken specifically to that question, we hold that mandatory fee-shifting under ERISA continues through the appeals phase where a fund is the prevailing party and where the district court has awarded fees and costs pursuant to ERISA § 502. Since 1986, we have steadfastly clung to the proposition that "in successful actions for delinquent pay-

ments, 'attorney's fees are [not] discretionary'" under ERISA. *United Retail and Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn,* 787 F.2d 128, 135 (3d Cir.1986) (citation omitted). In the language of the fee-shifting provision, Congress did not differentiate between fees and costs in the district court and fees and costs on appeal; it simply directed attorney's fees and costs to go to a fund if that fund were to prevail. *See* ERISA § 502(g)(2) ("[When] judgment in favor of the plan is awarded, the court shall award the plan [attorney's fees and costs.]"). Indeed, "[t]here is nothing to indicate that this provision does not apply to attorney's fees [and costs] on appeal[, and] other circuits have affirmatively held that it does apply to attorney's fees on appeal." *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1404 (6th Cir. 1995). *See also Operating Eng'rs Pension Trusts v. B & E Backhoe, Inc.,* 911 F.2d 1347, 1356 (9th Cir.1990) (holding that the provision applies to attorney's fees and costs on appeal); *Sheet and Metal Workers Health and Welfare Trust Fund v. Big D. Serv. Co.,* 876 F.2d 852, 854 (10th Cir. 1989) (same). *Cf. Ryan v. Asbestos Workers Union Local 42 Pension Fund,* Nos. 00–2813 & 00–2891, 2002 U.S.App. LEXIS 1037, at *14, 27 Fed.Appx. 100, 2002 WL 90976 (3d Cir. Jan. 24, 2002) (refusing to grant attorney's fees on appeal in favor of the *plan participant* where the district court determined that the plan participant prevailed on his claim but where it improperly concluded that he was not entitled to attorney's fees; and remanding to the district court for proper discussion of his entitlement to those fees and costs). To hold otherwise would not only contradict the blanket language of the provision, the wise persuasive jurisprudence of our sister courts and the strong undercurrents running through our own, but it would also

undermine the remedial effect of the statute to make the wronged fund whole.

■ Accordingly, we conclude that ERISA § 502(g)(2) applies to costs and attorney's fees on appeal where a Fund is the prevailing party and has been awarded attorney's fees and costs in the district court.

\* \* \* \* \* \*

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary.

The judgment of the district court will be affirmed.