J-A03008-19

2019 PA Super 254

| | | |
|---|---|---|
| RITA M. RICHARDS AND CAROLINE J. RICHARDS, CO-EXECUTRICES OF THE ESTATE OF JAMES G. RICHARDS, AND HELEN RICHARDS | : : : : : : : : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | | |
| | | No. 1719 WDA 2017 |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., RIVERSOURCE LIFE INSURANCE COMPANY AND THOMAS A. BOUCHARD | | |
| Appellants | | |

Appeal from the Order October 17, 2017
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): G.D. 01-006614

| | | |
|---|---|---|
| RITA M. RICHARDS AND CAROLINE J. RICHARDS, CO-EXECUTRICES OF THE ESTATE OF JAMES G. RICHARDS AND HELEN RICHARDS | : : : : : : : : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | | |
| | | No. 354 WDA 2018 |
| AMERIPRISE FINANCIAL, INC., AMERPRISE FINANCIAL SERVICES, INC., RIVERSOURCE LIFE INSURANCE COMPANY AND THOMAS A. BOUCHARD | | |
| Appellants | | |

Appeal from the Order Entered February 15, 2018
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-01-006614

| | | |
|---|---|---|
| RITA M. RICHARDS AND CAROLINE J. RICHARDS, CO-EXECUTRICES OF THE ESTATE OF JAMES G. RICHARDS, AND HELEN RICHARDS | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| | : | No. 557 WDA 2018 |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., RIVERSOURCE LIFE INSURANCE COMPANY, AND THOMAS A. BOUCHARD | : : : : : : | |
| Appellants | : | |

Appeal from the Order Dated March 20, 2018
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD 01-006614

| | | |
|---|---|---|
| RITA M. RICHARDS AND CAROLINE J. RICHARDS, CO-EXECUTRICIES OF THE ESTATE OF JAMES G. RICHARDS AND HELEN RICHARDS | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| | : | No. 764 WDA 2018 |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., RIVERSOURCE LIFE INSURANCE COMPANY AND THOMAS A. BOUCHARD | : : : : : : | |

Appellants

Appeal from the Judgment Entered May 8, 2018
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  G.D. 01-006614

- 2 -

BEFORE:   BOWES, J., SHOGAN, J., and STRASSBURGER*, J.

OPINION BY BOWES, J.:                        **FILED AUGUST 21, 2019**

Before us are four appeals of Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., Riversource Life Insurance Company, and Thomas A. Bouchard (collectively "Ameriprise"), from judgment and orders entered by the Court of Common Pleas of Allegheny County, following remand from this Court with directions to the trial court to recalculate damages after we vacated its award of punitive damages. *See Richards v. Ameriprise Fin., Inc.*, 152 A.3d 1027 (Pa.Super. 2016) (**Richards I**).[1]   The appeals have been consolidated for our review.  We affirm the judgment in part, and reverse it in part.  The order dated October 17, 2017, which amended the verdict and judgment, is affirmed in part and reversed in part.  The orders awarding appellate and post-appeal attorney fees are vacated, and the case is remanded for further proceedings consistent herewith.

We briefly summarize the underlying action.  In 1994, Plaintiffs' decedent James G. Richards and Helen Richards retained Richard Bouchard, a representative of IDS Insurance, the predecessor to Ameriprise, as their financial advisor.  Mr. Bouchard induced the couple to purchase a $100,000

---

* Retired Senior Judge assigned to the Superior Court.

[1] The decision was originally filed as a non-precedential memorandum. Plaintiffs filed a motion to publish, which was unopposed, and we granted the motion. **Richards I** was recirculated as an Opinion.

universal life insurance policy to avoid a reduction in income should Mr. Richards die first. Mr. Bouchard represented that annual premiums for the life of the policy would remain level at $6,000, payable at the rate of $500 per month. Based on those representations, the Richards applied for the policy and Ameriprise accepted their application. The application, as well as the policy they subsequently received, was consistent with the information provided by Mr. Bouchard.

In 2000, Mr. Bouchard advised Mr. Richards that a $15,053.59 prepayment in excess of the $500 monthly premium was needed to avoid lapse of the policy. The Richards complied, and continued to pay $500 per month until Mr. Richards's death on February 20, 2005. Upon Mr. Richards's death, Ameriprise paid the $100,000 death benefit to Mrs. Richards.

Plaintiffs initiated this action against Ameriprise by writ of summons in 2001, and a complaint was filed on July 30, 2008.[2] They sought damages for negligent and fraudulent misrepresentation, breach of fiduciary duty, negligent supervision, and violation of the Unfair Trade Practice and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-9.2, arising from the 1994 sale of the universal life insurance policy. The damages consisted of the $15,053.59 lump sum payment made in 2000 to prevent the policy from lapsing, but which was contrary to the terms of its purchase.

_____

[2] When Mr. Richards died in 2005, his co-executrices were substituted in the action.

- 4 -

The claims for breach of fiduciary duty and negligent supervision were dismissed at summary judgment. The remaining misrepresentation and UTPCPL claims were tried non-jury for three days in November 2014.[3] The court entered a verdict in favor of Plaintiffs solely on the UTPCPL claim and calculated actual damages at $15,053.59 plus interest, for a total of $34,006.44, awarded treble damages of $102,019.32, and punitive damages in the amount of $50,000.[4] As directed, Plaintiffs' counsel submitted a petition for attorney fees and costs pursuant to § 201.9-2 of the UTPCPL. Thereafter, the trial court awarded $84,072.50 in attorney fees and $1,759.58 in costs to

_____

[3] There is no right to a jury trial in private causes of action under the UTPCPL. *Fazio v. Guardian Life Ins. Co.*, 62 A.3d 396, 411 (Pa.Super. 2012).

[4] The exact language of the verdict was as follows:

> AND NOW, to wit, this 13th day of November, 2014, the Court finds that the Fraudulent Misrepresentation Claim and the Negligent Misrepresentation Claim are dismissed for failure to sustain burden of proof, verdict for Plaintiff on the UTPCPL Claim in the following amounts:
>
> 1. $15,053.39 plus interest from October 27, 2000, total $34,006.44;
>
> 2. Triple damages in the amount of $102,019.32; and
>
> 3. Punitive damages in the amount of $50,000 for outrageous conduct done with reckless indifference to Plaintiffs.
>
> 4. Plaintiffs are to submit a Petition for Counsel Fees and Costs within twenty (20) days. Defendants are to file any response thereto within five (5) days after receipt of Plaintiffs' petition.

Non-Jury Verdict, 11/13/14.

the law firm of Behrend and Ernsberger, and $26,840 in attorney fees for Massa Law Group.

Ameriprise appealed, and thereafter, on March 9, 2015, filed a *praecipe* for judgment on the verdict in the amount of $264,691.40. The judgment reflected the award of treble damages of $102,019.32, punitive damages of $50,000, and attorney fees and costs totaling $112,672.08. It did not include $34,006.44 indicated on the verdict slip for the actual loss sustained. Plaintiffs filed a motion to correct the judgment on April 15, 2015, averring that the amount of the judgment should be corrected to include the $34,006.44 in addition to treble damages of $102,019.32, for a total of $136,025.76 in liability damages. The trial court denied the motion on April 15, 2015, without explanation.

This Court subsequently reversed the award of punitive damages, affirmed the remainder of the judgment, and remanded the case to the trial court with the direction to recalculate the damages excluding the $50,000 punitive damages award. **Richards I**. Ameriprise sought *allocatur* from the Supreme Court, but its petition was denied. **Richards v. Ameriprise Fin., Inc.**, 170 A.3d 992 (Pa. 2017).

On remand, Plaintiffs filed a pleading styled as a "Motion to Amend the Verdict to Conform to the Superior Court's Published Opinion Dated December 16, 2016." Plaintiffs averred therein that, "pursuant to" this Court's memorandum, the verdict should be "recalculated to include," *inter alia*,

"$34,006.44 in restitution." In support thereof, Plaintiffs attached as an exhibit the last page of our Opinion concluding that the attorney fees were proportionate to the damages, and referencing Plaintiffs' receipt of "$34,006.44 in restitution and $102,019.32 in treble damages as a result of counsels' services in the face of corporate adversaries with greater resources than [Plaintiffs], and counsel did so on a contingent basis for approximately thirteen years." **Richards I**, **supra** at 1039.

The trial court granted Plaintiffs' motion and amended the November 13, 2014 jury verdict and judgment to award $34,006.44 in restitution damages in addition to treble damages, increasing the award of liability damages to $136,025.76. Order, 10/17/17. The court also subtracted the $50,000 punitive damage award. **Id**. Ameriprise's timely appeal from the order amending the verdict and judgment was docketed at 1719 WDA 2017.

On November 22, 2017, Plaintiffs filed a second petition seeking counsel fees and costs for work performed from December 2014 through November 2017, which included the first appeal and preparation of the second fee petition. Plaintiffs' Attorney Kenneth Behrend, whose hourly rate had previously been approved at $400, sought fees at the rate of $600 per hour. The rates of his associate, Kevin Miller, Esquire, and Attorney Rudolph Massa, formerly $275 per hour, were increased to $500 per hour. Paralegal Donna Lonzo's hourly rate, formerly $125 per hour, was increased to $190 per hour. Thus, all hourly rates reflected a substantial increase in the rates approved by

the trial court for bringing the case to trial, which this Court affirmed on appeal. **See Richards I**, **supra**. Plaintiffs' second petition sought attorney fees of $153,172 for the Behrend Law Firm, which included a $51,000 fee solely for preparation of the second fee petition itself, $2,800 for the Massa Law Group, and a $12,000 charge for preparation of a petition to publish.

In support of the reasonableness of Mr. Behrend's $600 hourly rate, Plaintiffs offered affidavits or certifications from six attorneys located throughout the Commonwealth who regularly performed fee-shifting work; bar fee surveys; and contemporaneously-maintained time records. Ameriprise filed a motion to strike the petition, which the trial court denied on December 19, 2017. After a hearing, the court granted Plaintiffs' fee petition in its entirety, awarding $153,172 to Behrend and Ernsberger, $2,800 to Massa, Butler and Giglione, and $789 in costs. Order, 2/13/18. Ameriprise timely appealed, complied with Pa.R.A.P. 1925(b), and the appeal was docketed at 354 WDA 2018.

On March 20, 2018, Plaintiffs filed a third fee petition seeking counsel fees and costs in conjunction with the filing of their response to Ameriprise's objections to the second fee petition and a hearing thereon. Ameriprise objected to the petition, but the trial court granted Plaintiffs' third fee petition in its entirety, awarding an additional $38,934 in fees to Attorney Behrend, $4,650 to Attorney Massa, and $17.90 in costs. Ameriprise's appeal was docketed at No. 557 WDA 2018.

On May 8, 2018, judgment was entered on the amended verdict in favor of Plaintiffs in the amount of $234,369.34. Ameriprise's appeal from the judgment was docketed at 764 WDA 2018.

Ameriprise presents two issues for our review:

1. Whether the trial court erred on remand by awarding quadruple damages under the UTPCPL?

2. Whether the trial court erred on remand in its awards of attorneys' fees under the UTPCPL for work on appeal, which awards included a 50% to 80% increase in counsel's hourly rate from the rates charged for the trial, included significant fees for seeking counsel fees and other work unrelated to the UTPCPL claim, and resulted in a total award of $331,480.90 in attorneys' fees for a claim for the return of a $15,000 premium payment?

Appellants' brief at 4.

We begin with the applicable legal principles that inform our review. The role of an appellate court in reviewing the trial court's decision in a non-jury trial is

> to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue . . . concerns a question of law, our scope of review is plenary.

***Richards I***, ***supra*** at 1034.

Plaintiffs' first issue involves statutory interpretation of the UTPCPL, which is a legal question. Thus, "our scope of review is plenary, and our

standard of review is *de novo.*"  ***Gregg v. Ameriprise Fin., Inc.***, 195 A.3d 930, 940 (Pa.Super. 2018).

The pertinent statutory provision is contained in the UTPCPL, 73 P.S. § 201-9.2, "Private actions," which provides in relevant part:

> (a)   Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($ 100), whichever is greater.  **The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($ 100), and may provide such additional relief as it deems necessary or proper.  The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees**.

73 P.S. § 201-9.2(a) (emphasis added).

Ameriprise contends, based upon the foregoing statutory language, that the trial court erred in amending the verdict and judgment upon remand to award both actual damages in the amount of $32,006.44 **plus** treble damages calculated by multiplying the actual damages times three.  Ameriprise argues that the trial court effectively awarded quadruple damages in violation of the UTPCPL.  In its memorandum, the trial court opined that Ameriprise waived this claim when it did not litigate this alleged error in the first appeal. Memorandum in Lieu of Opinion, 2/15/18, at unnumbered 3.  For the reasons that follow, we find no waiver.

The record reveals the following. The original judgment entered on the *praecipe* filed by Ameriprise consisted of $102,019.32 in treble damages under the UTPCPL, computed by multiplying the actual loss of $34,006.44 times three; punitive damages of $50,000; attorney fees of $84,072.50 for attorney Behrend's law firm and $26,840 for Massa Law Group; and $1,759.58 in costs. The total amount of the judgment entered on the verdict was $264,691.40. Plaintiffs filed a motion to correct the amount of the judgment and verdict, arguing that Ameriprise made a clerical error in failing to include $34,006.44, in addition to treble damages of $102,019.32, for a total of $136,025.76 in liability damages. By order dated April 15, 2015, the trial court denied Plaintiffs' motion to correct the judgment without explanation. On appeal, with the exception of the punitive damages award, this Court affirmed the judgment.

In support of their claim of waiver, Plaintiffs point out that Ameriprise alleged in post-trial motions that the court erred in awarding actual damages plus three times those damages, but subsequently abandoned that argument and did not pursue it in the first appeal.[5] Plaintiffs maintain further that the

_____

[5] The record reveals that Ameriprise actually pled that, "[t]he court erred to the extent that it awarded triple damages on top of the original damages award (resulting, essentially, in quadruple damages)." Motion for Post-Trial Relief, 11/21/14, at 15 ¶60. In its subsequent Pa.R.A.P. 1925(b) concise statement, Ameriprise alleged that, "[t]he Court erred in its award of treble damages and (to the extent it did so) its award of more than treble damages."

foregoing complaint of error was inconsistent with the *praecipe* for judgment

Ameriprise filed that did not include the actual damages of $34,006.44. In its

memorandum, the trial court urged this Court to find waiver, reasoning that

Ameriprise waived the opportunity to challenge the verdict by failing to

challenge the award of restitution damages during the first appeal.[6]

       The record does not support a finding that Ameriprise waived this issue.[7]

Plaintiffs recognized that the amount of the judgment entered below did not

_____

3/2/15, at 2 ¶8. Ameriprise filed the *praecipe* for judgment on the verdict on March 9, 2015, in which it included treble damages, punitive damages, and attorney fees and costs totaling $264,691.40.

[6] The trial court maintained that although the judgment remained uncorrected, "the verdict Appellants appealed remained unchanged throughout the appeal period," and the verdict included the restitution damages. Memorandum In Lieu of Opinion, 2/15/18, at unnumbered 2. We find this reasoning unpersuasive.

[7] Ameriprise observed that, "if Plaintiffs believed that the judgment did not reflect the trial court's non-jury verdict, they were the ones who could have appealed the issue." Ameriprise's Reply Brief, at 4. Generally, appellees are not required to file a cross-appeal to preserve an adverse ruling on an issue below. The exception to that rule, which is arguably applicable herein, is where the judgment did not grant the appellee the relief it sought. **See Pittsburgh Constr. Co. v. Griffith**, 834 A.2d 572, 588 (Pa.Super. 2003) (quoting Pa.R.A.P. 511 note); **see also Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.**, 137 A.3d 1247, 1259-1260 (Pa. 2016) (concurring opinion, Saylor, C.J.)(clarifying that Meyer Darragh was not required to file a protective cross-appeal where it prevailed below on its *quantum meruit* claim, and citing **Lebanon Valley Farmers Bank v. Commonwealth**, 83 A.3d 107, 113 (Pa. 2013) for proposition that "a successful litigant need not file a protective cross-appeal on pain of waiver"). Ameriprise does not argue, however, that Plaintiffs' failure to file a

include $34,006.44 in actual damages plus treble damages, which was Plaintiffs' interpretation of the non-jury verdict. Plaintiffs documented this awareness by filing a petition asking the trial court to correct the verdict and the judgment to include the additional $34,006.44 in damages.[8] The court denied the petition without explanation. Thus, Plaintiffs, not Ameriprise, were the aggrieved party with respect to any discrepancy between the non-jury verdict and the judgment at the time of the first appeal, and Ameriprise cannot be faulted for failing to challenge on appeal an issue upon which it was not the aggrieved party.[9]

Following our decision in **Richards I**, Plaintiffs filed a motion to amend the verdict and judgment "pursuant to the Superior Court of Pennsylvania's order dated November 9, 2016." They pointed to language in **Richards I** referencing $34,006.44 in restitution and $102,019.32 in treble damages, and

_____

cross-appeal from the trial court's denial of their petition to correct the verdict constituted waiver of that claim.

[8] Plaintiffs argued therein that the trial court had discretion to correct the judgment pursuant to Pa.R.C.P. 1701(b)(1), and represented further that an appellate court could only consider the judgment as it existed of record, and that the trial court could not modify it post-appeal. Plaintiffs' Motion to Correct Amount of Judgment, 4/15/15, at 2. Upon remand, Plaintiffs asserted a very different view of the judgment and the trial court's authority to modify it.

[9] On remand, at the October 10, 2017 hearing on Plaintiffs' motion to amend the verdict and judgment, counsel for Ameriprise stated that, in omitting the actual damages from the judgment, he interpreted the verdict in a manner consistent with the law permitting treble liability damages.

argued that correction of the amount of the judgment to add $34,006.44 in "restitution," was sanctioned by this Court.[10]  Ameriprise opposed the petition, and correctly observed that the trial court had previously denied such relief in its April 15, 2015 order.  Nonetheless, the trial court maintained that, in its original non-jury verdict, it "awarded Plaintiffs $34,006.00 in restitution." Memorandum in Lieu of Opinion, 2/15/18, at unnumbered 2.  Thus, it amended the verdict and judgment to include $34,006.44 **plus** treble damages of $102,019.32.[11]  Order, 10/17/17.  We find that it was at that juncture that Ameriprise was aggrieved as to the quadruple damages issue.

_____

[10] Plaintiffs' contention that amendment of the verdict to add $34,006.44 was **authorized** by this Court's November 9, 2016 order in **Richards I** is a misrepresentation of our earlier Opinion.  The alleged discrepancy between the liability verdict and the judgment amount was not before this Court in the first appeal.  Thus, we did not rule on the propriety of awarding both actual damages of $34,006.44 and treble damages consisting of three times that amount under the UTPCPL, and certainly did not sanction the correction of the verdict and judgment to include that amount.  It does not escape our notice that, although Plaintiffs were quick to point out a misplaced reference to restitution and treble damages, they ignored two instances in **Richards I** where this Court characterized the award as one for "treble damages and punitive damages, and allowing Appellees' counsel to submit a petition for their fees and costs."  **See Richards I**, at 1030, 1032.

[11] The trial court has never offered an explanation as to why it denied Plaintiffs' motion to correct the verdict/judgment in its April 15, 2015 Order.

By timely appealing the newly-amended judgment, Ameriprise preserved the right to challenge it herein. Accordingly, we find no waiver.[12]

We turn now to the merits of Ameriprise's first issue: that the trial court erred on remand in amending the verdict/judgment to award both actual damages and triple the amount of actual damages under the UTPCPL. Ameriprise argues that this amounts to quadruple damages, and that the statute only confers discretion upon the trial court to "award up to three times the actual damages sustained."[13] Ameriprise's brief at 34 (citing 73 P.S. §

_____

[12] The trial court subsequently stated that Ameriprise's *praecipe* for judgment on the verdict "was not in conformity with the verdict appealed in the month prior." Memorandum in Lieu of Opinion, 2/13/18, at unnumbered 2. It reasoned further that this Court, by affirming the trial court's damage award in all respects except punitive damages in **Richards I**, affirmed the award of restitution damages. We find Ameriprise's reading of the verdict as calculating an actual loss of $34,006.44, and then awarding three times that amount in treble damages, to be reasonable in light of the damages permitted under the UTPCPL and the somewhat ambiguous language of the verdict. The trial court did not designate the actual loss as "restitution." Moreover, the trial court's denial of Plaintiffs' motion to correct the judgment to add $34,006.44 in additional damages seemingly confirmed Ameriprise's interpretation of the verdict.

[13] As noted *supra*, in **Richards I**, this Court affirmed the award of treble damages, but remanded the case to the trial court with the direction that it excise the punitive damage award and recalculate damages. Ameriprise suggests that in amending the verdict to increase the award of UTPCPL damages, the trial court exceeded the scope of the mandate. **See Carmen Enters. v. Murpenter, LLC**, 185 A.3d 380, 389 (Pa.Super. 2018) (citation omitted) (reaffirming that the trial court is required to "strictly comply with the mandate of the appellate court" and issues not included in the mandate cannot be considered by the trial court). However, we deem this argument waived for lack of development.

- 15 -

201-9.2).  The statutory language seems to provide traction for Ameriprise's argument.

Plaintiffs rely, however, upon **Neal v. Bavarian Motors, Inc.**, 882 A.2d 1022 (Pa.Super. 2005), and **Metz v. Quaker Highlands, Inc.**, 714 A.2d 447 (Pa.Super. 1998), in support of their claim that awards for both restitution and treble damages under the UTPCPL cases are permitted.  In **Neal**, however, as Ameriprise points out, the jury awarded restitution damages on a contract claim and separately made special findings as to the monetary damages attributed to each of the two defendants under the UTPCPL.  The trial court remitted the jury verdict on the contract claim, and tripled the sum of $3854.66 awarded under the UTPCPL, and added the two together.  **Neal**, **supra** at 1026.  Thus, according to Ameriprise, the trial court in **Neal** correctly awarded triple, not quadruple damages, on the UTPCPL claims.

Ameriprise similarly distinguishes **Metz**, which involved claims of breach of contract for which the plaintiff was seeking rescission of a contract for sale of a lot, as well as damages under the UTPCPL.  The court voided the sale and ordered seller to return the $40,904.99 purchase price for the lot.  The court also determined that there was liability under the UTPCPL for deceptive conduct that caused additional damages: the down payment and transactional costs of the sale; the increased cost of a comparable lot and construction of a comparable home; and the increased cost due to rising interest rates.  **Metz**, **supra** at 449.  The trial court placed a value on the latter damages, and tripled

the amount in arriving at its damage award under the UTPCPL, expressly noting that the purchase price of the lot was not the figure to treble where the purchase price had been rescinded. *Id*. Thus, the trial court did not award both actual damages and treble the amount of actual damages **under the UTPCPL**.

As we recently noted, the UTPCPL reflects the legislature's intent to "empower . . . trial judges with broad remedial authority . . . to undo the harm that vendors cause when they break the UTPCPL." *Gregg*, *supra* at 941. The power to award treble damages is intended to punish "wayward vendors." *Id*. The statute does not authorize, however, the award of quadruple damages. We agree with Ameriprise that Plaintiffs have misconstrued and mischaracterized *Neal* and *Metz*, both of which involved non-UTPCPL claims upon which the remedies of restitution and rescission were granted. With regard to the UTPCPL claims in each case, the loss was ascertained and then tripled to arrive at the award. This is consistent with the plain meaning of the statutory language, as well as our interpretation of that statute in *Gregg*, *supra*, which allows the court to impose **up to** treble damages for actual damages sustained under the UTPCPL. *See also E.S. Mgmt. v. Yingkai Gao*, 176 A.3d 859, 868 (Pa.Super. 2017) (affirming award of $17,325 in damages, calculated by multiplying actual damages of $5,775 times three, plus attorney fees and costs under the UTPCPL); *In re Bryant*, 111 B.R. 474, 480 (E.D. Pa. 1990) (holding under the UTPCPL that "damages

are to be assessed in the amount of $29,854.59, which represents three times the actual damages of $9,951.53").

Herein, the trial court found no liability for negligent and fraudulent misrepresentation. Damages were awarded solely for violation of the catchall provision of the UTPCPL. Having ascertained that Plaintiffs sustained actual damages of $34,006.44 under the UTPCPL, the trial court had the discretion to award damages up to three times that amount, *i.e.*, a maximum of $102,019.32. By awarding $34,006.44 **plus** $102,019.32, the trial court erroneously awarded quadruple damages and exceeded its discretion under the UTPCPL. Ameriprise is entitled to relief. Accordingly, we reverse the award of "restitution" damages of $34,006.44.

Next, we address the first of Ameriprise's arguments involving attorney fees.[14] Preliminarily, Ameriprise challenges the trial court's jurisdiction to

_____

[14] Pennsylvania adopted the lodestar approach to attorney fees in **Birth Ctr. v. St. Paul Cos., Inc.**, 727 A.2d 1144 (Pa.Super. 1999) overruled on other grounds in **Mishoe v. Erie Ins. Co**., 824 A.2d 1153 (Pa. 2003). The lodestar method is used by the federal courts in arriving at awards of attorney fees pursuant to fee-shifting statutes. The method begins with the number of hours reasonably expended multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of the lawyer's services. The party seeking attorneys' fees bears the initial burden of demonstrating the reasonableness of the fees by submitting evidence supporting the hours worked and the rates claimed. The party challenging the fee request bears the burden of proving that the fee

entertain Plaintiffs' second and third fee petitions seeking legal fees for work on appeal, as well as legal fees for the preparation and defense of the fee petitions themselves. Ameriprise argues that Plaintiffs were required to first file an application for appellate attorney fees with this Court pursuant to Pa.R.A.P. 2751.[15] Having failed to do so, Ameriprise contends that the trial court lacked authority to award them. Ameriprise's brief at 37.

In support of its position, Ameriprise directs our attention to Pa.R.A.P. 2744, which it contends permits appellate courts to either award attorney fees or remand to the trial court for such a determination if an application pursuant to Pa.R.A.P. 2751 is made prior to remand of the record. The application must set forth the reasons why it should be granted, and be accompanied by the opinion of the court and the briefs used therein. Pa.R.A.P. 2751. Ameriprise maintains that absent application to this Court and a direction to the trial

_____

request is unreasonable, and if it meets that burden, the lodestar amount may be adjusted at the court's discretion.

[15] Pa.R.A.P. 2751, Applications for Further Costs and Damages, provides:

> An application for further costs and damages must be made before the record is remanded, unless the appellate court, for cause shown, shall otherwise direct. Such an application must set forth specifically the reasons why it should be granted, and shall be accompanied by the opinion of the court and the briefs used therein.

court, the court had no jurisdiction to award appellate legal fees on remand.[16] Ameriprise's brief at 38-39.

Plaintiffs counter that an application pursuant to Rule 2751 is the preferred procedure when a party seeks to have attorney fees taxed as costs in an appellate court based on a Pa.R.A.P. 2744 determination that "an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious[,]" which was not the case herein. Plaintiffs brief at 15-16. Pa.R.A.P. 2744, entitled "Further Costs. Counsel Fees. Damages for Delay," provides:

> In addition to other costs allowable by general rule or Act of Assembly," an appellate court may award as further costs damages as may be just, including
>
> (1) a reasonable counsel fee and
>
> (2) damages for delay at the rate of 6% per annum in addition to legal interest,
>
> if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.

Pa.R.A.P. 2744.

Plaintiffs also advance the trial court's position that, under **Ambrose v. Citizens Nat'l Bank of Evans City**, 5 A.3d 413, 423-25 (Pa.Super. 2010),

---

[16] Plaintiffs devote considerable argument to the proposition that attorney fees may be awarded for preserving the verdict on appeal, a premise that Ameriprise does not challenge. Ameriprise's Reply Brief at 7-8.

the trial court was the proper tribunal to award attorney fees, even appellate fees. Appellees' brief at 16. ***Ambrose*** involved the Wage Payment and Collection Law ("WPCL"), a mandatory fee-shifting statute. In ***Ambrose***, the trial court awarded appellate attorney fees following remand from this Court, and we affirmed on appeal. Ameriprise points out, however, that in ***Ambrose***, in contrast to the situation herein, this Court expressly "remanded the matter to the trial court to fashion an award of attorneys' fees" after concluding that the amount awarded was "presumptively unreasonable." ***Id***. at 416.

First, we note that ***Ambrose*** does not address specifically the trial court's jurisdiction to award appellate attorney fees. The issue in ***Ambrose*** was whether the WPCL authorized claimants to recover attorney fees incurred on appeal. Our discussion focused on whether the need to prevent employers from "misusing the appeal process to force prevailing WPCL claimants to drop their cases or risk exhausting their wage awards in the litigation[,]" justified the award of appellate attorney fees on such claims. ***Ambrose***, ***supra*** at 424. Absent was any discussion of the procedure for obtaining such fees, or whether a trial court could award them in the absence of a specific direction from the appeals court. Thus, ***Ambrose*** does not provide any guidance on the precise procedural argument Ameriprise advances herein.

Second, Pa.R.A.P. 2744 provides that an appellate court "may award" reasonable attorney fees and delay damages as "further costs damages . . . if it determines that an appeal is frivolous or taken solely for delay or that the

conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." Pa.R.A.P. 2744. Plaintiffs made no claim that Ameriprise's first appeal was frivolous or taken solely for purposes of delay. Rather, they based their entitlement to appellate attorney fees solely upon the UTPCPL. Furthermore, Ameriprise cites no authority requiring compliance with the application procedure set forth in Rule 2751 on the facts herein. Having relinquished jurisdiction and remanded to the trial court for the recalculation of damages, we find the trial court had jurisdiction to award statutorily-authorized attorney fees incurred in defending the first appeal.

Ameriprise next claims that the trial court abused its discretion in awarding Plaintiffs $200,362.90 in attorney fees for the appeal and preparation of the second and third fee petitions. Ameriprise's brief at 39. Ameriprise contends that the trial court did not properly apply the factors that must be considered in assessing the reasonableness of counsel fees, namely

(1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to properly conduct the case;

(2) The customary charges of the members of the bar for similar services;

(3) The amount involved in the controversy and the benefits resulting to the clients from the services, including ensuring that there is a sense of proportionality between the award of damages and the award of attorneys' fees; and

(4) The contingency or certainty of the compensation.

*Richards I*, *supra* at 1035; *see also Dibish v. Ameriprise Fin., Inc.*, 134 A.3d 1079, 1092 (Pa.Super. 2016).  In addition, this Court held in *McCauslin v. Reliance Finance Co.*,751 A.2d 683, 686 (Pa.Super. 2000), that prior to awarding counsel fees to a plaintiff on a UTPCPL claim, there should be "a sense of proportionality between an award of damages [under the UTPCPL] and an award of attorney's fees."  Ameriprise maintains that the award should not be automatic, and cites authorities for the proposition that the party seeking the fees bears the burden of proving their reasonableness.  Ameriprise's brief at 41.

In approving the award of attorney fees incurred in the first appeal, the trial court specifically addressed the aforementioned factors.  The court cited Plaintiffs' successful defense of the verdict on three of the four issues as the basis for awarding attorney fees associated with the first appeal.  Trial Court Opinion, 5/7/18, at 5.  The court noted that the time spent responding to the issues raised by Ameriprise on appeal was not unreasonable in light of the complexity and novelty of the issues.  It further found that Plaintiffs had not sought compensation for any time that the court deemed unreasonable or unrelated to the successful litigation of the UTPCPL claim.  *Id*. at 7.

The court determined further that Mr. Behrend's $600 per hour rate was the customary charge for members of the bar with similar experience, reputation, and skill, for similar services.  *Id*.  That finding was based on legal fee surveys deemed reliable by the trial court, as well as the affidavits of six

members of the Pennsylvania Bar whose practices involve fee-shifting cases and whose experience was commensurate with Mr. Behrend's. The court found the $500 per hour rate for Kevin Miller, Esquire and Rudolph Massa, Esquire, to be reasonable in light of their respective experience and skill. It expressly rejected Ameriprise's position that defense counsel's lower hourly rates reflected a reasonable fee for attorneys working pursuant to a contingent fee arrangement, reasoning that the uncertainty and risk associated with compensation warranted a higher fee. *Id*. at 7-8. Finally, the trial court concluded that the fees were proportional to the actual damages sustained and the benefit to Plaintiffs. On the record before us, we find that the trial court considered the proper factors in arriving at its award of attorney fees.

Ameriprise contends, however, that the increased hourly rates of Plaintiffs' counsel were unsupported by the record and unreasonable under the law. It argues that this Court upheld the award of attorney fees in *Richards I* based on the finding that "[c]ustomary charges from other members of the bar range from $275 to $400 per hour." *Richards I*, *supra* at 1039. On remand following that decision, Plaintiffs sought and were awarded attorney fees for the appeal based on hourly rates of $500 to $600. Ameriprise argues that the new rates, fifty to eighty percent higher than the reasonable hourly rates this Court affirmed in *Richards I* for work performed in this case up to 2015, are unreasonable. Furthermore, according to Ameriprise, the fee surveys and affidavits from attorneys in Philadelphia are

not representative of the prevailing rates for similar legal services in Allegheny County.[17]  It maintains further that the hourly rates greatly exceed the rates approved for Plaintiffs' counsel in other similar cases, and characterizes the higher rates as "simply a backdoor attempt to obtain a 'fee enhancement' which has been rejected by this Court."  Appellants' brief at 44 (citing **Boehm v. Riversource Life Insurance Co.**, 117 A.3d 308 (Pa.Super. 2015)).

Plaintiffs cite **Lanni v. State of N.J.**, 259 F.3d 146, 149-50 (3d Cir. 2001), in support of their contention that the hourly rate for counsel fees should reflect the market value at the time the fee petition is presented rather than the rate at the time the services were performed.  Appellees' brief at 28 The trial court relied upon this federal authority to justify its award of the significantly higher hourly rates of $600 and $500 per hour in 2017, in contrast to the $400 and $275 per hour rates approved in 2014.  Trial Court Opinion, 5/7/18, at 7.  Plaintiffs maintain further that the higher hourly rates are warranted in light of Mr. Behrend's successful appeals and additional experience in the years since the trial court approved the hourly rates in 2015.  Appellees' brief at 42.

Ameriprise counters that the increase in the hourly rate is excessive, and that the record does not support "the 82% increase in Mr. Miller's rate,

---

[17] In **Richards I**, we noted that the trial court cited **Boehm v. Riversource Life Insurance Co.**, 117 A.3d 308 (Pa.Super. 2015), as precedent for the award of $400 per hour for Mr. Behrend.  **See** Trial Court Opinion, 9/21/16, at 7.

- 25 -

the 52% increase in Ms. Lonzo's rate, or the 25% increase in Mr. Mazza's rate." Ameriprise's brief at 47. Ameriprise points to the hourly rate of its counsel, specifically Ms. Condo, a litigator with thirty-six years of experience, who charged $350 per hour for legal services, in contrast to Mr. Behrend who was awarded $600 per hour. Ameriprise's brief at 50; *see Mitchell v. City of Philadelphia*, 2010 U.S. Dist. LEXIS 32984 *41 (E.D. Pa. 2014) (holding in a civil rights case, that "the prevailing market rate can be established from . . . the amount charged by counsel for the opposition in the particular case").[18]

We find support in the record for the $600 per hour rate charged by Attorney Behrend. Although Mr. Behrend offered no evidence of his customary hourly rate, which was viewed by the United States Supreme Court in *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984), as the "best evidence of a prevailing market rate," Mr. Behrend provided his own affidavit describing his experience, expertise, and fee awards in fee-shifting cases and appeals. He offered affidavits from other attorneys with commensurate experience in fee-

_____

[18] Ameriprise offered the testimony of Attorney David G. Oberdick, from the Pittsburgh law firm of Meyer, Unkovic, and Scott. Attorney Oberdick noted first that his firm did not charge higher rates for services rendered on appeal, nor had he seen such a practice. He testified that he was familiar with the rates charged by a former partner engaged in fee-shifting litigation, and his hourly rates were less than those of Attorney Behrend or his associates. He found the rates published in the fee surveys to be inconsistent with his experience, and opined that a reasonable hourly rate for Mr. Behrend was $350 to $400, and $275 for Attorney Miller.

shifting litigation and bar surveys, all of which are generally regarded as competent evidence of a prevailing rate. *See Mitchell*, *supra* at *41-42. The fee surveys, together with the affidavits of Attorneys Miller and Massa and paralegal Ms. Lonzo, provided the basis for the increased hourly rates for their services, and were largely unchallenged by Ameriprise.

As we noted in *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 978 (Pa.Super. 2011), "the determination of a reasonable fee is an inherently case-specific endeavor." While the hourly rates show a striking increase over a relatively short time interval, because there is record support for the trial court's finding that the rates were reasonable, our standard of review dictates affirmance. *See Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 51 (Pa. 2011) (quoting *Hoy v. Angelone*, 720 A.2d 745, 752 (Pa. 1998) ("We will not find an abuse of discretion in the award of counsel fees 'merely because we might have reached a different conclusion.'")).

Ameriprise also contends that an award of $331,480.90 for attorney fees for a case where actual damages amounted to approximately $34,000 is disproportionate. Ameriprise's brief at 62 (citing *McCauslin*, *supra* for the proposition that the term reasonable attorney fee "imparts a sense of proportionality between an award of damages and an award of attorney's fees"). In support thereof, Ameriprise points out that actual damages totaled $15,006.44 plus interest, for a total of $34,006.44. Under the UTPCPL, the trial court tripled the amount of those damages for a total liability award of

$102,019.32. The trial court had previously awarded attorney fees of $110,000 for the litigation up to and including trial and this Court affirmed that award on appeal, finding it proportionate to the damages. Ameriprise maintains that the trial court's award of an additional $200,362.90 in attorney fees for the appeal and post-appeal proceedings is disproportionate to the damages. Ameriprise contends further that since counsel was awarded attorney fees significantly higher than the forty percent he agreed to accept, and Plaintiffs were not obligated to pay any more in fees after the initial award, the additional sums awarded represent "a bonanza or windfall to Plaintiffs' attorney." Ameriprise's brief at 64.

We noted in **Neal**, **supra** at 1031, that in **McCauslin**, we did not quantify "a proportion that would be the limit of acceptability, but only suggested that there be a 'sense of proportionality' between" the recoverable fees and the amount of the damages. **Cf. Skurnowicz v. Lucci**, 798 A.2d 788, 796 (Pa.Super. 2002) (superseded by statute on other grounds **Milliken v. Jacono**, 60 A.3d 133 (Pa.Super. 2012)) (citing **McCauslin** for proposition that proportionality of attorney fees arises when fee award exceeds twice the amount of damages). In **Neal**, UTPCPL damages of $1,000 were assessed against one defendant and $2,854.66 against the other, for a total of $3,854.66. The court trebled those damages and awarded $11,563.98. An award of counsel fees that was approximately three and one-half times the award of treble damages, and eleven and one-half times the actual damages,

was held not to be disproportionate. ***Neal***, ***supra*** at 1031 n.8. ***See also Baynes v. George E. Mason Funeral Home, Inc.***, 2012 U.S. Dist. LEXIS 39990, *16 (W.D. Pa. 2012) (holding attorney fee award of less than twice the amount of damages collected in the underlying UTPCPL action "did not exceed traditional measures of proportionality employed by Pennsylvania courts" in such cases). Here, the multiple is roughly three times the trebled damages and ten times the actual damages.

As our High Court noted in ***Schwartz v. Rockey***, 932 A.2d 885, 898 (Pa. 2007), "[t]he discretion of courts of original jurisdiction is not limitless," and appellate courts may review awards for "rationality, akin to appellate review of the discretionary aspect of equitable awards." ***Accord Nexus Real Estate, LLC v. Erickson***, 174 A.3d 1 (Pa.Super. 2017). Recently, in ***Boehm***, ***supra*** at 336, we explained further that, in fee-shifting cases, the trial court's discretionary award or denial of attorney fees must be consistent with the purpose of the statute: to punish and deter "unfair and deceptive business practices and to encourage experienced attorneys to litigate such cases, even where recovery is uncertain." ***Id***. (quoting ***Krebs v. United Refining Co. of Pennsylvania***, 893 A.2d 776, 788 (Pa.Super. 2006)).

We find that the total amount of the attorney fees awarded herein raises the specter of disproportionality. We also recognize, however, that proportionality is hard to measure when there are multiple appeals and post-judgment proceedings. Since we conclude that remand is required to excise

specific fees that should not have been awarded, to reduce fees that are excessive, and for a re-examination of specific line items in the fee petition, we need not address proportionality today.

Ameriprise contends that attorney fees incurred in pursuing attorney fees have not been held to be recoverable in Pennsylvania. It complains further that, even if it is proper to award such fees, the expenditure of eighty-five hours preparing the second fee petition was excessive. Many of those hours were spent by Attorney Behrend researching entitlement to fees for which he charged $600 per hour, an unreasonable rate for research according to Ameriprise. In addition, Ameriprise takes issue with some of the time entries reflected in the petitions for which fees were awarded.

We note that the trial court merely concluded, without specifics or explanation, that the number of hours spent preparing the fee petitions was reasonable, and awarded fees based on the number of hours multiplied by the hourly rate. The trial court also did not expound as to why it permitted fees for the specific line items that were challenged by Ameriprise.

There is a dearth of Pennsylvania authority addressing the propriety of a fee award for hours spent preparing and litigating fee petitions. ***See Birth Center v. St. Paul Companies Inc.***, 727 A.2d 1144, 1160-61 (Pa.Super. 1999) (holding that award of attorney fees in bad faith case may include reasonable fees incurred in the preparation and litigation of the fee petition if the client retains a material interest in the fee litigation). ***See also Freeze***

- 30 -

***v. Donegal Mut. Ins. Co.***, 603 A.2d 595, 601 (Pa.Super. 1992) (declining to award attorney fees for time expended pursuing fee under the No Fault Act).

The federal courts generally permit such fees, but the hours assigned to that task must be reasonable. As the district court observed in ***Johnson v. G.D.F., Inc.***, 2014 U.S. Dist. LEXIS 14446, *31 (N.D. Ill. 2014), "Determining the reasonable amount of time to prepare a fee petition is inherently an inexact science." Nonetheless, the court held in that case that 68.58 hours spent by an experienced practitioner drafting and briefing the first fee petition was unreasonable, and awarded fees commensurate with twenty hours. ***See also Clemens v. N.Y. Cent. Mut. Fire Ins. Co***., 264 F.Supp.3d 618, 660 (M.D. Pa. 2017) (rejecting "mind boggling" attorney fees of $27,090 for 64.5 hours at a rate of $420 per hour for reconstructing hours in preparation of fee petition in UIM/bad faith case).

We find that an award of reasonable attorney fees under the UTPCPL for preparing fee petitions is consistent with the legislature's aim of encouraging experienced attorneys to litigate such cases, even where the damages are small. Nonetheless, we agree with Ameriprise that Mr. Behrend spent an inordinate number of hours preparing the second and third fee petitions. Our review of the second petition confirms that many hours were spent researching entitlement to attorney fees under the UTPCPL and conducting bill review. Mr. Behrend admittedly has expertise and vast experience in UTPCPL litigation and in preparing fee petitions. Indeed, the attorney affidavits he

offered in support of his increased hourly rate, as well as his own affidavit in support of his fees in the underlying litigation, were recycled from a 2013 fee petition previously submitted in **Boehm**, **supra**. Attorney Behrend asserted in the latter that he had spent many hours researching fee petitions and had considerable experience in preparing and filing them. Affidavit, Kenneth Behrend, 10/22/13. On the record before us, we find the expenditure of eighty-five hours by such an experienced practitioner to prepare a fee petition to be presumptively unreasonable.[19]

In addition to challenging the overall charge for preparing and litigating the fee petitions as excessive and unreasonable, Ameriprise objected to four specific entries in the fee petitions: one hour for an appearance in court on a Sunday; two hours preparing an unopposed motion to release funds held by the Prothonotary; almost three hours allocated to the preparation of a reply brief on an issue that was not before the court; and eleven hours of research and drafting on the subject of "restitution and treble damages" attributed to the first appeal, but which was not an issue in that appeal. **See** Ameriprise's brief at 68. The trial court did not specifically address Ameriprise's allegations that these line items were inaccurate, excessive, or non-compensable.

_____

[19] Those hours translated into a fee of $51,000 for preparing the second fee petition and brief in support thereof. Plaintiffs' counsel received an additional $43,000 in fees for argument on the second fee petition and preparation of the third fee petition.

It is our expectation that a trial court assessing the reasonableness of attorney fees will thoroughly scrutinize the specific line items that are challenged, generally evaluate the reasonableness of the expenditure of time for the services listed in the fee petition, make adjustments when they are warranted, and explain its reasons for the award. The broad-brush approach taken by the trial court impedes our ability to perform proper appellate review. Thus, we vacate the orders awarding attorney fees based on the second and third fee petitions, and remand for reconsideration of those fees in light of the foregoing.

In addition, we find merit in Ameriprise's contention that it was an abuse of discretion to award legal fees associated with preparation of the unopposed petition to publish. Amerprise cites *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), for the proposition that "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." Ameriprise's brief at 66.

The publication of this Court's memorandum opinion in *Richards I* did not enhance the likelihood that Plaintiffs would ultimately prevail or advance the litigation or benefit them in any way. *See Uniontown Newspapers, Inc. v. Pa. Dep't of Corr.*, 197 A.3d 825, 839 (Pa.Cmwlth. 2018) (reducing award of attorney fees under RTKL expended in preparing and filing motion to publish as unreasonable as the motion did not advance the litigation and was unnecessary). Moreover, the record establishes that Plaintiffs' counsel almost

exclusively litigates UTPCPL insurance cases, and may have had at one time as many as twenty-nine cases involving similar facts against Ameriprise. Publication of our memorandum decision in **Richards I** rendered it precedential, a benefit to Plaintiffs' counsel and other clients involved in ongoing and future UTPCPL cases, but not Plaintiffs herein. For these reasons, we find that it was an abuse of discretion on the part of the trial court to award $12,000 in counsel fees for the preparation of the petition to publish.

In conclusion, we reverse in part and affirm in part the May 8, 2018 judgment appealed at No. 764 WDA 2018. We reverse the portion of the trial court's October 17, 2017 order amending the verdict and judgment to add $34,006.44 in restitution damages, but affirm the award of treble damages and attorney fees and interest. (No. 1719 WDA 2017). We affirm Appellant's entitlement to appellate attorney fees at the rates charged, but vacate the February 13, 2018 and March 20, 2018 orders granting Appellants' second and third fee petitions (354 WDA 2018) and (557 WDA 2018). Specifically, with regard to the latter orders, we reverse the award of attorney fees for the petition to publish, and remand for an overall reduction in the hours/fees attendant to preparation of the fee petitions themselves, a circumspect assessment of the accuracy and reasonableness of the complained-of line items, and the entry of a new attorney fee award consistent with this Opinion.

Judgment affirmed in part, reversed in part. Order dated October 17, 2017, which amended the verdict and judgment affirmed in part and reversed

in part. Orders regarding attorney fees vacated. Case remanded with instructions. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary


Date: 8/21/19