J-A18017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DIAMOND DESIGN, INC., T/D/B/A DIAMOND DESIGN JEWELERS OF WEXFORD | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALICIA BLAIR, SCOTT BLAIR AND JEWELRY BY ALICIA AND SCOTT | : | No. 997 WDA 2022 |
| | : | |
| v. | : | |
| | : | |
| DIAMOND DESIGN, INC., T/D/B/A DIAMOND DESIGN JEWELERS OF WEXFORD | : | |
| | : | |
| v. | : | |
| | : | |
| CHARLES DUFFY AND CHRISTYANN DUFFY | : | |
| | : | |
| APPEAL OF: DIAMOND DESIGN, INC., CHARLES DUFFY AND CHRISTYANN DUFFY | : | |

Appeal from the Judgment Entered August 19, 2022,
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD 18-10757

| | | |
|---|---|---|
| DIAMOND DESIGN, INC. T/D/B/A DIAMOND DESIGN JEWELERS OF WEXFORD | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |

J-A18017-23

| ALICIA BLAIR, SCOTT BLAIR AND JEWELRY BY SCOTT AND ALICIA | : | No. 1066 WDA 2022 |
|---|---|---|
| Appellants | : | |
| v. | : | |
| CHARLES DUFFY AND CHRISTYANN DUFFY | : | |

Appeal from the Judgment Entered August 19, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-18-010757

BEFORE: BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

MEMORANDUM BY LAZARUS, J.: **FILED: February 9, 2024**

The parties, Alicia Blair, Scott Blair, and Jewelry by Scott and Alicia (the Blairs/Defendants/Appellants/Cross-Appellees) and Charles Duffy, Christyann Duffy, and Diamond Design, Inc., (the Duffys/DD/Plaintiffs/Appellees/Cross-Appellants) appeal and cross-appeal, respectively, from the judgment entered on a verdict, after the trial court granted, in part, and denied, in part, Appellants' post-trial motions.[1]

Appellants Scott and Alicia Blair misappropriated a customer list from Appellees' 40-year-old jewelry business before opening their own jewelry

---

[1] On August 19, 2022, Plaintiffs filed a *praecipe* to enter judgment on the verdict in the amount of $142,400.00; judgment was entered on the docket the same day. *See* Pa.R.C.P. 227.4(2). *See **Stahl Oil Co. v. Helsel***, 860 A.2d 508, 511 (Pa. Super. 2004) (appeal lies from judgments entered subsequent to trial court's disposition of post-verdict motions, not from order disposing of post-trial motions).

- 2 -

business, located one-and-one-half miles from Appellees' jewelry shop. Alicia is Appellee Christyann Duffy's daughter and Appellee Charles Duffy's step-daughter; Scott is Appellees' son-in-law.[2]

Following a three-day trial, a jury entered a $225,000.00[3] verdict, for misappropriation of a trade secret, in favor of Appellees, and awarded $5,000.00 to Appellant Scott Blair on his counterclaim for violation of Pennsylvania's Wage Payment and Collection Law (WPCL).[4] Appellants filed post-trial motions, which included a motion to add liquidated damages and a petition for attorneys' fees and costs under the WPCL. Following a hearing, the court denied the motion in part and granted the motion in part. The court's post-trial order molded the verdict by reducing it by $82,600.00 (representing damages for conversion and unfair competition claims), awarding $6,250.00

---

[2] This case brings to mind the often-quoted phrase from Shakespeare's King Lear:

> "How sharper than a serpent's tooth it is/To have a thankless child!"

Shakespeare, William, *King Lear* (Act 1, Scene 4).

[3] The jury's verdict breaks down as follows:

- Misappropriation of trade secrets - $142,400.00
- Common law unfair competition - $41,300.00
- Conversion - $41,300.00

**See infra** at 7. In addition, the jury found that Alicia Blair was not owed any wages and the jury found in favor of the Duffys on Appellants' defamation claim.

[4] 43 P.S. §§ 260.1-260.45.

in liquidated damages[5] to Scott Blair, and granting an additional $27,642.00 in attorneys' fees and costs to Scott Blair.[6] After careful consideration, we vacate the portion of the judgment that molded the verdict and denied a judgment notwithstanding the verdict (JNOV) on Alicia's WPCL claim, reimpose the jury's original verdict on the conversion and unfair competition claims and remand for a new trial on Alicia's WPCL claim. We affirm, on the opinion authored by the Honorable Alan Hertzberg, in all other respects.

Diamond Design, Inc. (DD), which closed its doors in June 2018, was the Duffys' family-owned jewelry business. DD opened in 1982 in downtown Pittsburgh and operated for almost 40 years, with its final principal place of business located at 140 Church Road, Wexford, PA. The Blairs[7] worked as employees of DD until April 13, 2018, when they "left the employment of Diamond Design without any notice." Plaintiffs' Complaint, at 8/20/18, ¶ 12.

---

[5] Liquidated damages are statutorily-imposed damages to compensate for wages that remain unpaid for thirty days beyond the scheduled payday and no good faith dispute over the wage claim exists. **See** 43 P.S. § 260.10.

[6] Specifically, the court awarded attorneys' fees in the amount of $26,100.00 and costs in the amount of $1,542.00. All remaining post-trial claims were denied.

[7] In their answer, the Blairs averred that Alicia worked at DD as a retail salesperson from 2003 until April of 2018, and that Scott was employed as a jeweler by DD from November 2017 through April 2018. Scott left his job as a helicopter mechanic in late November 2017 to come to DD, where he was trained by Mr. Duffy to do bench work. Defendants' Answer, New Matter, and Counterclaim, 9/28/18, at ¶¶ 5-7; **see also** Trial Court Opinion, 11/10/22, at 2.

Alicia was a salaried DD employee with an annual salary of over $68,000.00,[8] while Scott worked as an apprentice, in which capacity was taught to do bench work[9] by Mr. Duffy. Alicia testified that during the holiday season (mid-November through December), she would often work an average of 50-70 hours a week. *See* N.T. Jury Trial, 10/28/21, at 259-61.

In late 2017/early 2018, when the Duffys contemplated retirement, the parties engaged in negotiations to sell DD to the Blairs. *See* N.T. Jury Trial, 10/27/21, at 94 (Mr. Duffy testifying intent was to "transfer the store to Alicia and still maintain [a position] within the business when she needed help"). On April 6, 2018, the parties drafted a proposed agreement of sale with the purchase price of the business (exclusive of the building) established at $350,000.00. Those negotiations, however, proved unsuccessful. On April 14, 2018, Alicia posted on her Facebook page that she decided to quit working at DD, without giving the Duffys two-weeks' notice. *Id.* at 91-92. Then, "[w]hen word got out that the customer base had already been taken from the store, it kind of stripped the sale for purposes of the business." *Id.* at 95.

Three months later, in July 2018, the Blairs started a new jewelry business, "Jewelry by Alicia and Scott," a limited liability corporation with its principal place of business located at 306 Warrendale Road, Warrendale, PA,

---

[8] Alicia testified that she was paid bi-weekly. *See* N.T. Jury Trial, 10/28/21, at 258.

[9] Bench work consisted of putting together new jewelry pieces and repairing jewelry. *Id.* at 253.

one and one half miles from DD. *Id.*, 10/28/21, at 309. DD alleges that the Blairs misappropriated DD's customer lists and files, stole DD's tools and equipment, and stole DD's trade secrets, resulting in unfair competition, loss of profits, loss of goodwill, and "[a]ncillary and related costs." Plaintiffs' Complaint, at 9/28/18, ¶¶ 21-33. The Duffys alleged that the customer list was "password protected" on their company computer. *See* N.T. Jury Trial, 10/27/21, at 213. Mr. Duffy testified that, over the years, he developed a customer list for DD, adding new names, addresses, and phone numbers to the list throughout their years in business. *Id.* at 75-76. The customer list, which was never "put out for public usage[,] . . . was maintained on a computer used by Alicia in her office."[10] *Id.* at 87, 89; *id.* at 87 (Mr. Duffy testifying Alicia would take sales slips with customers' names and addresses on them and "transfer all of the information[,] including the sale[,] onto the computer"). The customer list contained approximately 5,000 names and "was the basis of the income coming into the store." *Id.* at 90. At trial, Mr. Duffy testified that a "Grand Opening card" for *Jewelry by Alicia and Scott* was sent to customers on DD's customer list. *Id.* at 95.

---

[10] Mr. Duffy further testified that Alicia performed marketing and sales for DD, handled the business's social media accounts, and ran "the front of the store so that [he] could focus on operations in the back of the store[,] which was the manufacturing end of the business." *Id.* at 78. The Blairs, on the other hand, claimed that Alicia was employed as a retail salesperson at DD, that her job encompassed sales, marketing, and customer service, and that she "was never responsible for the management of [DD]." Defendants' Answer/Counterclaim/New Matter, 9/28/18, at 23-25.

On August 20, 2018, DD filed a complaint against the Blairs alleging misappropriation of trade secrets under the Pennsylvania Uniform Trade Secrets Act (PUTSA),[11] libel, unfair competition, breach of duty of loyalty, tortious interference with contractual and business relationships, conversion, computer fraud and abuse, unjust enrichment, and civil conspiracy. Defendants filed an answer, new matter, and counterclaims that included claims for overtime pay under the WPCL, defamation, and tortious interference with business relations. In their answer to Defendants' counterclaims, the Duffys admitted that "Alicia Blair worked as a retail salesperson." Duffys' Answer and New Matter to Complaint to Join Additional Defendants, 4/12/19, at ¶ 12.

On February 12, 2022, the Blairs moved for partial summary judgment, arguing that Alicia's WPCL counterclaim should be granted, as a matter of law, where she was classified as a non-exempt employee at DD who was entitled to overtime (1.5 times regular rate of pay for all hours worked in excess of 40 hours/week). *See* 34 Pa. Code § 231.41. The Blairs also argued that judgment should be entered as a matter of law in favor of Scott on his WPCL claim where he received no pay as an employee of DD for a period of months. *See* 43 P.S. § 251. On April 19, 2021, the trial court denied the Blairs' motion for partial summary judgment.

---

[11] *See* 12 Pa.C.S. §§ 5301-5308.

A jury trial was held from October 27-29, 2021. Following trial,[12] the jury returned the following verdict:

- Defendants violated the PUTSA;
- Damages in amount of $142,400.00 for PUTSA violation;
- Defendants engaged in unfair competition;
- Damages in the amount of $41,300.00 for unfair competition;
- Defendants engaged in conversion;
- Damages in the amount of $41,300.00 for conversion;
- No wages due to Alicia Blair for Plaintiffs' WPCL violation;
- Wages, in the amount of $5,000.00[,] due to Scott Blair for Plaintiffs' WPC[L] violation [back pay and overtime]; and
- The Duffys did not defame the Blairs.

Jury Verdict, 10/29/21 at 1-4. The Blairs filed post-trial motions, including claims for $102,417.00 in attorneys' fees and costs under the WPCL, *see* 43 P.S. § 260.9(f),[13] liquidated damages, the entry of JNOV or a new trial, the molding of Scott Blair's damages award and DD's verdict to avoid double recovery.[14]

---

[12] The parties also stipulated that DD was worth $350,000.00 when the agreement to sell was in the Duffys' hands. *See* Order, 10/27/21.

[13] To support his claim for attorneys' fees and costs under the WPCL, Scott Blair attached the affidavit of John Berry, Esquire, who, after reviewing his entire litigation file and fee records, concluded that "Mr. Blair [] incurred $6,603[.00] in recoverable costs related to the prosecution of his wage payment claim and . . . $102,417[.00] in recoverable fees and costs related to the prosecution of his wage payment claim." Affidavit of John J. Berry, Esquire, 11/8/21, at ¶¶ 13-14.

[14] In their motion for post-trial relief, the Blairs sought, in relevant part, the molding of DD's verdict to avoid double recovery. *See* Post-Trial Motion, 11/18/21, at 1-2. More specifically, the Blairs argued that the verdict should be molded to prevent a double recovery, based on the "election of remedies doctrine." Specifically, they claimed "[t]he court committed an error of law
*(Footnote Continued Next Page)*

- 8 -

_____

[with regard to] the three claims to a combined amount of $225,000.00 in damages owed by the Blairs [where t]he damages awarded by the jury for all three of the Plaintiffs['] claims flowed from the *one-time* use of the customer list at issue." Post-Trial Motion, 11/8/21, at ¶¶ 28-29 (emphasis in original). **See also id.** at ¶ 30 ("The [m]olded [v]erdict as it stands is inconsistent and duplicative, and results in a significant windfall to the Plaintiff above and beyond their claimed damages."); **id.** at ¶ 32 ("[T]he Blairs respectfully ask the [c]ourt to mold the verdict to remove any additional damages for the two claims, [c]onversion and [u]nfair [c]ompetition, as failure to do so results in an impermissible windfall for the Plaintiffs that is contrary to the damages sustained due to the Blairs' alleged misconduct."). The Blairs relied upon **Gamesa Energy USA, LLC v. Ten Penn Ctr. Assocs., L.P.**, 217 A.3d 1227, 1234 (Pa. 2019), **AAA Mid-Atlantic Ins. Co. v. Ryan**, 84 A.3d 626 (Pa. 2014), and **Schwartz v. Rockey**, 932 A.2d 885 (Pa. 2007), to support their claim that the Duffys "double recovered" when, in addition to the PUTSA award, the jury awarded damages for conversion and unfair competition claims. None of these cases controls the instant matter.

**Gamesa** involved a breach of contract action where the Supreme Court determined that appellants were improperly awarded damages for both breach of contract and recission of a lease agreement based on the conclusion that "a non-breaching party to a contract may, by its conduct following a breach, conclusively elect its remedy and be bound by it to one theory for recovery of damages." 217 A.3d at 1243. The Supreme Court in **AAA Mid-Atlantic** held that the amount of damages that may be offset against recovery under an underinsured motorist's policy includes damages recovered from all tortfeasors. 84 A.3d at 628. There, the case involved the concept of subrogation and preventing an injured party from profiting from a "double recovery" at an indemnifying party's expense. Finally, **Schwartz** involved the sale of a residential home where the buyer filed a lawsuit alleging fraudulent non-disclosure and/or concealment of water infiltration. On appeal, the Court was faced with determining whether the buyers, who had made an election of remedies, had foreclosed the remedy of rescission. When the buyers attempted to amend their complaint to substitute a demand for rescission, more than two years after the sale, the court denied rescission due to the buyers' failure to pursue the remedy with "sufficient promptitude." 932 A.2d at 554. Our Court vacated the trial court's decision to deny rescission. On discretionary appeal, the Supreme Court reversed our Court's decision and remanded because "the court's decision to permit the filing of an amended complaint to assert the remedy of rescission was not dispositive concerning the requirement of prompt action." **Id.** at 553-54.
*(Footnote Continued Next Page)*

Following a hearing, the court entered an order denying in part and granting in part Defendants' post-trial motion. Specifically, the court molded the verdict to $142,400.00 to remove any additional damages for Plaintiffs' conversion and unfair competition claims, included an award of $6,250.00 in liquidated damages to Scott Blair on his WPCL claim, and granted $27,642.00 in attorneys' fees and costs to Scott Blair. **See** Order, 7/25/22, at 1-2. With regard to the conversion and unjust enrichment claims, the court found that there was no basis for damages in excess of the $142,000.00 verdict for violating the PUTSA because section 5304 of the PUTSA states "damages can include both the actual loss caused by misappropriation and the unjust

_____

It has been established that "[t]he primary substantive application of the [election of remedies] doctrine has been to prevent double recovery for a single injury . . . and thus, an election should be required **among inconsistent remedies** at some point prior to the entry of a final judgment." **Gamesa**, **supra** at 1234 (emphasis added). Here, the common law claims of unfair competition and conversion and violations of the PUTSA are distinct causes of action that are hardly inconsistent remedies. **See Hill v. Best Medical International, Inc.**, 2011 WL 5082208 (W.D. Pa. 2011) (PUTSA not intended to abrogate common law conversion claims based upon taking of confidential business "information that . . . was . . . of value to the claimant."); **see also Morgan's Home Equipment Corp. v. Martucci**, 136 A.2d 838, 848 (Pa. 1957) (trading on another's business reputation by . . . other means is enjoinable on grounds of unfair competition; if particular use in question is reasonably likely to produce confusion in public mind, equity will restrain unfair practice and compel accounting of profits gained thereby). In fact, the PUTSA provides that, [t]his chapter does not affect . . . other civil remedies that are not based upon misappropriation of a trade secret." 12 Pa.C.S.A. § 5308(b)(2).

enrichment caused by misappropriation that is not taken into account in computing actual loss." 12 Pa.C.S.A. § 5304.

The parties filed timely appeals and cross-appeals, as well as court-ordered Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal. On appeal, Appellants/Cross-Appellees raise the following issues for our consideration:

(1) Whether the trial court committed an error of law and abused its discretion in denying Appellants' post-trial motion for [JNOV] as to Alicia Blair's [WPCL] claim, as no reasonable juror could have concluded that Diamond Design carried its burden of proving that Ms. Blair's primary job responsibilities were administrative in nature[.]

(2) Whether the trial court committed an error of law in denying Appellants' post-trial motion for [JNOV] as to Diamond Design's trade secret claim, as both the specific provisions of the [PUTSA] and binding precedent establish that the specific customer list at issue is not a trade secret as a matter of law[.]

(3) Whether the trial court abused its discretion in denying Appellants' post-trial motion for JNOV as to Diamond Design's unfair competition claim, as no reasonable juror could have concluded that the parties were competitors based on the facts and evidence adduced at trial[.]

(4) Whether the trial court abused its discretion in denying Appellants' post-trial motion for JNOV as to Diamond Design's conversion claim, as the undisputed facts of record established that Diamond Design was not deprived of its use, possession, or property rights in the customer list at issue[.]

(5) Whether a new trial on damages was warranted when the amounts awarded by the jury to Appellee[s] were unjust and bore no reasonable relationship to the damages actually suffered by Appellee[s]?

(6) Whether the jury award to Appellant, Scott Blair, was so arbitrary and inconsistent with the undisputed evidence adduced at trial that the verdict should have been molded?

- 11 -

(7) Whether the trial court erred in its award of fees and costs in less than the amount requested because [] Scott Blair was successful in prosecuting his [WPCL] claim?[15]

Appellants' Brief, at 13-14 (renumbered for ease of disposition) (unnecessary capitalization omitted).   On cross-appeal, Cross-Appellants/Appellees raise the following claim:  "Whether the [t]rial [c]ourt's [o]rder granting Appellants' [p]ost-trial [m]otion by molding the amount awarded by the jury for damages to Appellees[,] by reducing it from $225,000.00 to $142,400.00[,] constituted an error of law or an abuse of discretion."[16]  Appellees/Cross-Appellant's Brief, at 8.

---

[15] Notably, on appeal, the Duffys maintain that the court's award of attorneys' fee/costs to Scott on his WPCL claim was reasonable.  ***See*** Appellees' Brief, at 49.

[16] Appellees raised the following issue, among others, in their Pa.R.A.P. 1925(b) concise statement of errors complained of:

> The [h]onorable [t]rial [c]ourt improperly granted attorneys['] fees in the amount of $26,100.00[.00] in favor of Scott Blair and costs in the amount of $1,542.00[.00], when there was only a [v]erdict of $5,000.00 entered by the [j]ury[.]

Pa.R.A.P. 1925(b) Statement, 9/14/22, at 2.  However, in their brief they concede that the trial court did not err or abuse its discretion by denying Appellants' post-trial motion and awarding $27,642.00 in attorneys' fees and costs.  ***See*** Appellees' Brief, at 8.  In fact, the Blairs sought attorneys' fees and costs in the amount of $102,417.00, in their post-trial motions.

Moreover, Appellees' issue regarding "[w]hether the trial court's order denying Appellant's Post-trial motion requesting a new trial and/or JNOV constituted an error of law or an abuse of discretion[,]" Appellees' Brief, at 8, is merely a counterstatement to Appellants' fifth and seventh issues raised on appeal. ***See*** Appellants' Brief, at 13-14.

Because Appellees'/Cross-Appellants' issue is dispositive of their cross-appeal, we will address it first. Appellees argue that the jury's $225,000.00 verdict is fully supported in the record and, thus, the court's molding of the verdict to $142,400.00 was in error. Specifically, Appellees claim that DD's claims for conversion and unfair competition are distinct torts and causes of action from their claims under PUTSA and that evidence supports the award of damages for all three claims.

In reviewing a challenge to the trial court's decision concerning a request to mold a jury verdict, we are mindful of the following:

> The power of a trial judge to exercise his discretion in molding a verdict to fit the expressed desires of the jury is a cornerstone of the jury system.
>
> Verdicts which are not technically correct in form but which manifest a clear intent on the part of the jury may be corrected without resort to further jury deliberations or the grant of a new trial.
>
> At the same time, we are reminded that the power of a trial court to mold a verdict is not unlimited, and a verdict may not be molded where the intention of the jury is not obvious, or where the intention of the jury has not been expressed at all as when the jury has failed to return a verdict, or to satisfy the supposed equities of the case. Nor may a verdict be molded to express an intention on the part of a jury when the question was never submitted to the jury.

*House of Pasta, Inc. v. Mayo*, 449 A.2d 697, 701-02 (Pa. Super. 1982) (citations omitted).

Following agreement by counsel, the trial court instructed the jury on the claims of conversion and unfair competition, as follows:

- 13 -

To succeed on [a conversion] claim, Diamond Design must prove all the following: [(1)] Diamond Design's ownership or right of possession of customer list; [(2)] the Blairs' conversion by wrongful act inconsistent with the property rights of Diamond Design; [(3)] Diamond Design was deprived of its right and customer list; and [(4)] Diamond Design suffered damages.[17]

To succeed on [an unfair competition] claim, Diamond Design must prove the following: [(1)] the Blairs entered a field already occupied by a rival of established reputation; [(2)] the Blairs' business and that of Diamond Design's w[ere] competitors; [and (3)] the Blairs engaged in misappropriation of Diamond Design's trade secrets.

N.T. Jury Trial, 10/28/21, at 486-87. Moreover, the court gave the following instruction on damages:

The fact that I am now going to instruct you about damages does not imply any opinion on my part as to whether damages should be awarded. If you find that any of the parties suffered damages, then you must determine an amount of damages that you find adequately compensate[s] them for such financial harm as they have sustained.

**If you find in favor of Diamond Design on its [PUTSA] claim, Diamond Design is entitled to damages. You may award** Diamond Design **damages that include the actual loss** caused by the defendant's misappropriation **as well as the unjust enrichment** of the defendants caused by misappropriation.

**If you find in favor of Diamond Design on its conversion claim against the defendants, you <u>must</u> award Diamond Design an appropriate amount of damages. The measure of damages for a conversion is the market value of the converted property at the time and place of the conversion**.

---

[17] The Blairs' proposed jury instruction on conversion is identical to the one given by the trial court to the jury as cited above. Notably, that instruction includes the element that DD suffered damages. *See* Defendants' Proposed Jury Instructions, at No. 12 (Conversion).

> Thus, you may award Diamond Design damages in an amount equal to any and all property converted by the defendants.[18]

N.T. Jury Trial (Jury Charge), 10/29/21, at 493-95 (emphasis added).[19]

In **B.G. Balmer & Co. v. Frank Crystal & Co.**, 148 A.3d 454 (Pa. Super. 2016), the appellants asserted, among other things, a claim for unfair competition. After the jury returned awards for both compensatory and punitive damages, the appellants argued on appeal that "the trial court erred in awarding as compensatory damages $2,191,569.00 for lost profits and $200,000.00 in the diminution in value of [appellee's] business because Pennsylvania law precludes an award of both[.]" **Id.** at 471. Acknowledging that "an injured party cannot recover twice for the same injury," **id.** at 473, our Court concluded "where a plaintiff is able to demonstrate damages for loss of profits and loss of equity value that are not duplicative of each other due to the tortious conduct of another party, both types of damages may be recovered as compensatory damages." **Id.**

Here, the Duffys established that the value of the business, at the time they were negotiating to sell it to the Blairs, was $350,000.00, and that once $170,000.00 of the business's hard assets (business materials and equipment the Duffys sold) and $37,600.00 of unsold business assets were subtracted

---

[18] **See PTSI, Inc. v. Haley**, 71 A.3d 304 (Pa. Super. 2013) ("In conversion[,] the measure of damages is the full value of the chattel, at the time and place of the tort.").

[19] The trial court, however, did not instruct the jury on damages with regard to unfair competition.

from that value, they incurred $142,400.00 in damages from the stolen customer list. *See* N.T. Jury Trial, 10/27/21, at 116. The Duffys argued that once the Blairs took DD's customer list and sent out the mailers, the list no longer had any value for them. *See id.* at 249. Moreover, the Duffys testified that after the Blairs used DD's customer list to open their own shop, the Blairs' new jewelry company made $390,000.00, $450,000.00, and $650,000.00 in 2018, 2019, and 2020, respectively. *See id.* at 236-37.

The trial court states that it "agree[s] with the jury's determination that there was liability for the two claims [of conversion and unfair competition, however, the trial judge] molded the verdict because no additional damages could be awarded where the measure of damages for [those claims] was already included in the Trade Secrets Act damages award." Trial Court Opinion, 11/10/22, at 5. Moreover, in supporting its decision to mold the verdict post-trial, the court concluded that "there is no authority for allowing damages in excess of [DD]'s actual loss [under the PUTSA] under the common law unfair competition or conversion claims, and [DD] proposed no contrary instruction to the jury." Trial Court Opinion, 11/10/22, at 4. Ironically, however, the jury verdict form specifically provides that if the jury finds that the Blairs violated the PUTSA and awards them damages for that violation, it is "to Proceed to Question No. 3," for the claim of unfair competition." Jury Verdict Sheet, 11/1/21 at 2. Questions 3 (unfair competition) and 5 (conversion) then state that if the jury finds the Blairs committed those common law causes of action, that they are to proceed to Questions 4 and 6,

respectively, and "[s]tate the amount of damages, if any, sustained by Plaintiff as a result of the" unfair competition and conversion.[20]  *Id.* at 2-3.

In *Tincher v. Omega Flex*, 104 A.3d 328 (Pa. 2014), our Supreme Court explained the role of the trial court instructing a jury as follows:

> [W]hen a court instructs the jury, the objective is to explain to the jury how it should approach its task and the factors it should consider in reaching its verdict.  On appeal, the reviewing court examines jury instructions to determine whether the trial court abused its discretion or offered an inaccurate statement of law controlling the outcome of the case.  A jury charge is adequate unless the issues are not made clear, the jury was misled by the instructions, or there was an omission from the charge amounting to a fundamental error.  The appellate court will afford a new trial if an erroneous jury instruction amounted to a fundamental error or the record is insufficient to determine whether the error affected the verdict.

*Id.* at 351.

Instantly, the trial court found that there was no basis for damages in excess of the $142,000.00 PUTSA verdict because section 5304 states that "damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account

---

[20] Conversion is defined as:

> [T]he deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification.  When such an act occurs, the plaintiff may bring suit if he had an immediate right to possession of the chattel at the time it was converted.

*Bank of Landisburg v. Burruss*, 524 A.2d 896, 898 (Pa. Super. 1987).

in computing actual loss." 12 Pa.C.S.A. § 5304. This conclusion, however, is inconsistent with the court's instruction that if the jury finds that the Blairs committed conversion, then they **must** award damages. Simply stated, the court's molded verdict does not reflect the intent of the jury, as memorialized in the answers provided on the jury verdict form.

In fact, the jury's verdict conformed with the trial court's explicit instructions on the causes of action (PUTSA, unfair competition, and conversion) and damages. *See* N.T. Jury Trial (Jury Charge), 10/28/21, at 495 (trial court instruction stating if jury finds Duffys proved conversion claim, then it must award damages). Moreover, the court found that the evidence at trial proved that the Blairs interfered with DD's use of its customer list (conversion) and that there was sufficient evidence to prove an unfair competition claim where Mr. Duffy was still doing business after the Blairs opened their jewelry store, the Blairs took the Duffys' customer list and later registered Jewelry by Alicia and Scott, and individuals interested in the Duffys' business lost interest in buying DD when they found out Alicia possessed the list. *See Williams v. Dulaney*, 480 A.2d 1080, 1082 (Pa. Super. 1984) ("It is the duty of the trial judge to determine, prior to sending the case to the jury, whether or not the plaintiff has introduced sufficient evidence to establish the elements necessary to maintain an action."); *see also Gordon v. Trovato*, 338 A.3d 653 (Pa. 1975) ("There must be evidence upon which a jury's conclusion may be based.").

Therefore, we conclude that the court improperly molded the verdict with regard to the damages awarded on the conversion and unfair competition claims. By reducing the verdict, where the law provides for independent causes of action (conversion and unfair competition) in addition to those under the PUTSA, the court invaded the province of the jury and negated its findings as expressed on the jury verdict sheet, which was the product of a joint effort by Plaintiffs' and Defendants' counsel. *See* N.T. Jury Trial (Charging Conference), 10/28/21, at 397-99. *See Mendralla v. Weaver Corp.*, 703 A.2d 480, 486 (Pa. Super. 1997) (en banc) ("While a trial court has discretion in deciding whether to mold a verdict, it must nonetheless adhere to the principle that a verdict may only be molded where the intention of the jury is clear."). Because the court erroneously molded the jury's awards as to conversion and unfair competition, we must reverse and remand for the reinstatement of the jury's original awards on those claims.[21]

We now turn to the Blairs' claims. In their first issue on appeal, the Blairs contend that the jury improperly concluded that DD met its burden of proving Ms. Blair's primary job responsibilities were administrative in nature and, thus, she was an "exempt" employee who was not entitled to overtime pay. We are constrained to agree.

---

[21] Moreover, by agreeing to the various instructions for damages given to the jury, the Blairs waived any issue regarding the jury's award.

The Fair Labor Standards Act (FLSA) requires certain employers to pay their employees at least "one and one-half times the regular rate," i.e., overtime pay, for any hours worked in excess of a forty-hour workweek. 29 U.S.C. § 207(a)(1). However, "any employee employed in a bonafide . . . **administrative** . . . capacity," *id.* at § 213(a)(1), is exempt from this overtime requirement. *Id.* (emphasis added). An employer seeking to establish that an employee is exempt under this "administrative" exemption must show that: (1) the employee's salary is at least $684.00 per week; (2) the employee's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and (3) the employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). *See generally id.* at § 541.700 (Primary duty).

The existence of an FLSA overtime exemption for professional employees is an affirmative defense for which the employer bears the burden of proof. *Auer v. Robbins*, 519 U.S. 452 (1997). *See* 29 CFR § 541.203 (Administrative exemption examples); *see also id.* at § 541.700(a) ("Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the

employee's job as a whole."); *id.* at § 541.200(1)(2)-(3).[22]  In order to show

that the employee's work is "directly related to the management or general

business operations of the employer or the employer's customers . . . an

employee must perform work directly related to assisting with the running or

servicing of the business."  *Id.* at § 541.201(a).

In their answer and new matter to the Blairs' counterclaims, the Duffys

denied that Alicia was "a non-exempt employee who was entitled to overtime

pay for any time worked in excess of forty (40) hours in a workweek."  Duffys'

Answer and New Matter to Counterclaim, 4/12/19, at ¶ 17.  In their brief in

_____

[22] The court gave the following, relevant instruction to the jury, as proposed
by the Blairs, regarding the FLSA's Administrative Employee Exemption:

> In order for Diamond Design to establish that Alicia Blair was an
> exempt administrative employee, Diamond Design must prove
> each of the following by a preponderance of the evidence:
>
> > 1. Alicia Blair was compensated on a salary basis;
> >
> > **2. Alicia Blair's primary duty was the performance of
> > office or non-manual work directly related to the
> > management or general business operations of
> > Diamond Design or Diamond Design's customers; and**
> >
> > **3. Plaintiff's primary duty included the exercise of
> > discretion and independent judgment with respect to
> > matters of significance.**

"Primary duty" means the principal, main, major[,] or most important duty
that the employee performs.

N.T. Jury Trial, 10/28/21, at 491 (emphasis added).  In addition, the court
instructed the jury that, "[i]f you find in favor of the Blairs under their wage
claims, you must award the Blairs damages in the amount that they should
have been paid less what [DD] actually paid them."  *Id.* at 495.

opposition to the Blairs' motion for partial summary judgment, the Duffys averred that Alicia was an exempt DD employee under Pennsylvania's "administrative" exemption, *see* 34 Pa. Code § 231.83, claiming, among other things, that "Alicia's primary duties include[d], but were not limited to, management, design of jewelry, and independent sales." Brief in Opposition to Motion for Partial Summary Judgment, at 8; *see also id.* at § 541.100(a)(2)-(4).

Therefore, as Alicia's employers, the Duffys had the burden to prove that Alicia was an exempt employee under the *administrative* exemption[23] of the FLSA, *Robbins*, *supra*, not the creative professional or learned professional exemptions. *See* 29 CFR § 541.300(a)(2). Thus, even if Alicia performed any "invention, imagination, originality[,] or talent in a recognized field of artistic or creative endeavor," like designing jewelry for DD's customers, it is irrelevant for purposes of determining whether, in the instant matter, she is an exempt *administrative* employee under the FLSA. *See id.* at § 541.300(a)(2) (creative professional exemption applies to employee "[w]hose primary duty is the performance of work . . . [] requiring invention,

---

[23] In fact, during the charging conference, the Duffys' attorney specifically noted that his clients were claiming Alicia was exempt under the administrative and not the executive exception. *See* N.T. Jury Trial (Charging Conference), 10/28/21, at 435.

imagination, originality or talent in a recognized field of artistic or creative endeavor").[24]

Regarding the second prong[25] of the administrative exception test, to qualify as engaging in work "directly related to the management or general business operations[,] an employee must perform work directly related to assisting with the running or servicing of the business, **as distinguished, for example, from** working on a manufacturing production line or **selling a product in a retail** or service **establishment**." 29 C.F.R. § 541.201(a) (emphasis added). *See* N.T. Jury Trial, 10/28/21, at 253-59 (Alicia testifying she did "mostly sales," meeting with customers, greeting them, taking their repair jobs when they came in, assisting customers with designing something or making a purchase, and often times opening and closing the store on a workday, she never ran the business side); *id.* (Alicia also testifying she "did social media accounts (1-2 hours/week), . . . would occasionally [approximately 5% the time] write an appraisal, . . . would enter customers' names in the data list [monthly or quarterly]"); *id.* at 254, 280 (Alicia testifying approximately 70-75% of her work week was spent "dealing with customers on sales and design"); *id.* at 320 (Alicia testifying about 75% of

_____

[24] Although vendors would send Alicia "stones on memo," the customer would then pick out the one they wanted for a particular design piece, Alicia would purchase the one(s) they wanted, and then send back the ones the customer did not want. *See* Alicia Blair Deposition, 1/4/21, at 33-34. However, Alicia would "never just purchase[] items without authorization." *Id.* at 56.

[25] The parties do not dispute that Alicia was paid on a salary basis.

her time was spent "[p]rimarily selling and designing [jewelry]") **but see id.** at 322 (Alicia testifying she "misspoke" when she stated at deposition that 75% of her work was strictly design and she exercised her independent judgment "as to what [she] think[s] is a good idea, what might be plausible, [and] what is the best deal"). **Id.** at 326 (Alicia testifying she modified social media pages for DD on Facebook and Instagram). **See also** Alicia Blair Deposition, 1/4/21, at 14-19 (Alicia stating her first position at DD was as a "salesclerk," that she worked on designs for jewelry about 75% of the time); **id.** at 22-24 (Alicia stating she worked on some mailer flyers and structured some print advertisements that were all approved by Mr. Duffy before they would get mailed or sent); **id.** at 25-28 (Alicia testifying she created and worked on store's social media account); **id.** at 94 (Alicia testifying roughly 70% of her time at DD consisted of selling retail jewelry).

A primary duty "directly related to the management or general business operations" includes work in a functional area of the business, such as accounting, budgeting, auditing, quality control, purchasing, procurement, marketing, safety and health, personnel management, and similar activities. 29 C.F.R. § 541.201(b). **See also id.** at § 541.201 (Notes) ("directly related to the management or general business operations" prong under section 541.200(a) met if employee engages in running business itself or determining overall course or policies, not just in day-to-day carrying out of business' affairs).

Despite Alicia's testimony to the contrary, Mrs. Duffy testified that Alicia "stepp[ed] into [Mrs. Duffy's] shoes," taking over her managerial responsibilities at DD after Mrs. Duffy had brain surgery and "was out of commission for five months." N.T. Jury Trial, 10/27/21, at 210, 214-15. In particular, Mrs. Duffy testified Alicia's duties included: taking over "the tax and financial aspects of the business . . . [which] involved purchasing, procuring items, inventory[, p]ersonnel management, human resources[,] hir[ing] two people, [and] had the ability to hire and fire employees." *Id.* at 216. Therefore, even though the Duffys admitted Alicia was a retail salesperson at DD and Alicia testified that roughly 70-75% of her time spent at DD was performing retail jewelry sales, the jury, as fact finder, may have chosen to believe Mrs. Duffy's testimony that Alicia performed management or general business operations, and to discredit Alicia's testimony that she performed non-managerial tasks for DD.

However, even assuming the jury believed Mrs. Duffy's testimony that Alicia performed some duties directly related to the running of DD's business, in order to prove that Alicia was not entitled to overtime as an exempt employee, the Duffys had to show that these tasks were Alicia's "primary duties" at DD. *See* 29 C.F.R. §541.201(a). Instantly, the Duffys failed to present evidence on the relative importance of Alicia's administrative tasks as compared with her retail sales duties and the amount of time she spent performing those tasks. Accordingly, we conclude that the jury's verdict denying Alicia's counterclaim under the WPCL is not supported by record

evidence. *See id.* at § 541.700(a) (among factors to consider in defining "primary duty" of employee are: "(1) the relative importance of the exempt duties as compared with other types of duties; (2) the amount of time spent performing exempt work; (3) the employee's relative freedom from direct supervision; and (4) the relationship between employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee").

It is well-established that the status of an employee under the FLSA is "extremely individual and fact-intensive, requiring a detailed analysis of the time spent performing the administrative duties and a careful factual analysis of the full range of the employee's job duties and responsibilities." *Id.* at § 541.201, Overview. *See also id.* at § 541.103 ("Applying the regulations interpreting the FLSA, an employee may be exempt if he or she spends more than 50 percent of his or her time performing executive, administrative, or professional work, or if he or she spends less than 50 percent of his or her time on these tasks, but these tasks nevertheless predominate or define his or her job."). *But see* N.T. Jury Trial, 10/28/21, at 262 (Alicia testifying she would "enter sales tax at the end of the month . . . [but] was never shown exactly what sales were [hers]"); *id.* at 261-62 (Alicia testifying she did not have understanding of DD's books and finances, and did not know what her sales numbers were in a given month); *id.* at 336 (Alicia testifying she did marketing/print advertising for DD approximately 1-3 times/year for a total of a couple hours; it was not one of her primary duties). *See also* Duffys'

Answer and New Matter to Complaint to Join Additional Defendants, 4/12/19, at ¶ 12 (Duffys admitting in answer to Blairs' counterclaims that "Alicia Blair worked as a retail salesperson"); N.T. Jury Trial, 10/28/21, at 444-46 (DD's bookkeeper's deposition testimony, read into record at trial, "99% of time" when she came into DD, she "would see [Alicia] with customers . . . engaged in jewelry sales"); *id.* at 349-351 (family friend, who helped as "back-up" employee at DD, testified Alicia was "the base of the business" who "did sales, marketing, designs, prioritized some of the bench work, tidied up," but that "good portion of her time" consisted of "working directly with customers" when she was there).

Thus, we reverse the trial court's order denying the Blairs' motion for JNOV where no reasonable juror could conclude, based on the evidence presented at trial, that Alicia's primary duty was the performance of office or nonmanual work directly related to the management or general business operations of the employer or the employer's customers. *See Martin v. Cooper Elec. Supply Co.*, 940 F.3d 896, 900 (3d Cir. 1991) ("It is the employer's burden to affirmatively prove that its employees come within the scope of the overtime exemption, and any exemption from the Act must be proven plainly and unmistakably."); *see also Arnold v. Ben Kanowsky, Inc.*, 361 U.S 388 (1960) (because FLSA is remedial statute, exemptions are typically narrowly construed). Upon remand, the court shall determine the amount of damages due Alicia and any costs for reasonable attorneys' fees,

*see* 43 Pa.C.S.A. § 260.91(f) and, if appropriate, liquidated damages. *See id.* at § 260.10.[26]

After reviewing the parties' brief, relevant case law and statutes, and the certified record on appeal, we rely on Judge Hertzberg's opinion to affirm the judgment as it relates to the remaining claims advanced by Appellants/Cross-Appellees on appeal: (1) JNOV properly denied on unfair competition claim where Mr. Duffy still doing business when Blairs opened their jewelry store; (2) no new trial on damages warranted where jury's award reasonably related to damages suffered by Duffys;[27] (3) jury properly awarded

_____

[26] The trial court's jury verdict sheet included the following relevant questions with regard to Alicia's WPCL claim:

Question No. 7

Are wages due to Alicia Blair for Plaintiff[]s' violation of the Pennsylvania Wage Payment Collection Act?

If you answered "Yes" proceed to Question No. 8. If you answered "No," proceed to Question 9.

Question No. 8

State the amount of damages, if any, sustained by Alicia Blair as a result of the Pennsylvania Wage Payment Collection Act violation.

Jury Verdict, 10/29/21, at 3.

[27] The parties agreed to the damage provisions on the verdict slip as follows:

THE COURT: So[,] it is going to read ["]state the amount of damages sustained by plaintiff as a result of the Pennsylvania Uniform Trade Secrets Act violation.["] All right moving on to

*(Footnote Continued Next Page)*

Scott $5,000.00 in overtime pay where: there was a good faith dispute as to the payments made to Scott; Scott understood he would be paid upon completion of contract for sale of business as he came on board to DD as apprentice to learn business from Mr. Duffy; once Duffys did not sell the business to the Blairs, Duffys issued Scott check for wages earned in March

---

three: Did defendants engage in unfair competition? You got these answers yes or no.

MR. CORCORAN: Yeah.

THE COURT: All right, this is what we usually use.

MR. CORCORAN: It is no big deal. You know what, I don't care. You can change it to that, Your Honor, I don't care.

MR. BERRY: Yeah

\* \* \*

THE COURT: Everybody takes advocate positions in that and it is not the time for it, in my view, but that is what happens. If you answer yes, proceed to number four. Question number four is going to be ["]state the amount of damages, if any, sustained by the plaintiff.["] Okay, state the amount of damages, if any, sustained by plaintiff as a result of the unfair competition. If they answer no, they are not doing that. Okay, number five: Did defendants engage in conversion, yes or no? If yes, proceed to six. If no, number seven. Same exercise here. State the amount of damages sustained, if any, by plaintiffs as a result of the conversion. . . . **Does that sound okay to both of you**?

**MR. BERRY: Uh-huh.**

MR. CORCORAN: Yes.

N.T. Jury Trial, 10/28/21, at 397-99 (emphasis added).

and April 2018; there was no evidence adduced at trial regarding Scott's wages; and, as fact finder, jury had duty to determine a fair and reasonable rate to calculate WPCL damages; (4) trial court struck proper balance and awarded reasonably-related attorney fee award of $27,642.00 based on Scott's WPCL claim where Blairs' counterclaims were neither "inextricably intertwined" with Duffys' successful PUTSA, unfair competition, and conversion claims, nor did they flow from same set of operative facts. *Cf.* ***Ambrose v. Citizens Nat. Bank of Evans City***, 5 A.3d 413 (Pa. Super. 2010) (where WPCL claim initiated litigation and defendant's meritless counterclaims were "inextricably intertwined" with plaintiff's meritorious WPCL claim where the defensive counterclaims flowed from same set of operative facts).[28]

Judgment affirmed in part and reversed in part. Molded verdict of $142,200.00 is reversed. Original jury verdict of $225,000.00 is reinstated in accordance with dictates of this decision. Order denying JNOV as to Alicia's WPCL claim is reversed. Case remanded for new trial as to damages concerning Alicia's WPCL claim, including any statutory attorneys' fees or

---

[28] Having determined the court abused its discretion in molding the verdict and zeroing out the damages for the Duffys' conversion and unfair competition claims, we find this claim moot.

liquidated damages, if applicable. Remainder of judgment affirmed. Jurisdiction relinquished.[29]

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/09/2024

---

[29] We instruct the parties to attach a copy of Judge Hertzberg's decision in the event of further proceedings in the matter.